# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF MASSACHUSETTS

Kang Lu,  )
)
Plaintiff  )
)
v.  )  Case No. _____
)  *(to be determined by Clerk's Office)*
)
Maura Healey,  )
_____ Defendant.  )

**COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF**

## INTRODUCTION

My name is Kang Lu. I am the party bringing the suit to seek declaratory judgement on three federal questions arising under the Constitution, and for injunctive relief to prohibit the defendant, her officers, employees, attorneys and agents from further violating the Constitution to deprive my right to keep and bear Arms under the Second Amendment. Additionally, I seek to recover property deprived from me without due process of law, and compensation for my losses.

FILED
IN CLERKS OFFICE

2020 SEP 23   PM 12: 00

U.S. DISTRICT COURT
DISTRICT OF MASS.

1

## TABLE OF CONTENTS

2

3                                                        <u>Page No.</u>

4
Introduction...............................................1

5
Parties....................................................3

6
Table of Authorities and Exhibits..........................4

7

8
Venue, Forum and Jurisdiction..............................8

9
Factual Summary............................................9

10
Three Federal Questions...................................10

11
        First Federal Question............................11

12
        Second Federal Question...........................15

13
        Third Federal Question............................19

14

15
As-Applied Challenge......................................22

16
Prayer for Relief.........................................26

17
Demand for Trial by Jury..................................27

18

19

20

21

22

## PARTIES

The Plaintiff:

|  |  |
|---|---|
| Name: | Kang Lu, M.D. |
| Address: | 5753 Highway 85 North |
|  | Crestview Florida 32536 |
| County: | Okaloosa County |
| E-Mail Address: | LibertyWithoutLicense@gmail.com |
| Telephone Number: | 850-517-1010 |

The Defendant:

|  |  |
|---|---|
| Name: | Maura Healey, in her Official Capacity: |
| Address: | Massachusetts Attorney General, |
|  | 1 Ashburton Place |
|  | Boston, MA 02108 |
| County: | Suffolk County |
| E-Mail Address: | Maura.T.Healey@state.ma.us (?) |
|  | ago@state.ma.us (?) |
| Telephone Number: | 617-727-2200 |
| Fax: | 617-727-6016 (?) |

1

## TABLE OF AUTHORITIES AND EXHIBITS

2

### Foundational Authorities:

3

Declaration of Independence

4

United States Constitution

5

Massachusetts Constitution

6

### Federal Statutes:

7

| | |
|---|---|
| Title 28 U.S. Code § 1391 | Venue generally |
| Title 28 U.S. Code § 1331 | Federal question |
| Title 28 U.S.C. § 2201 and § 2202 | Creation of remedy and Further relief |
| Title 28 U.S. Code § 132 | Creation and composition of district courts |
| Title 10 U.S. Code § 246 | Militia: composition and classes |

8

9

10

11

### Massachusetts Statutes:

12

| | |
|---|---|
| MGL 269 § 10 | Carrying dangerous weapons |
| MGL 140 § 121 | Firearms ... definitions |
| MGL 140 § 131 | Licenses to carry firearms |
| MGL 62C § 55A | Exempt property from [tax] levy |
| MGL 60 § 24 | Exemptions from levy by distress |
| MGL 161A § 47 | Bus carriers carries passengers *for hire* |
| MGL 90 § 51M (2017) | Public carrier transports *for hire* |
| MGL 90 § 49O (2017) | Air carrier transports *for hire* |
| MGL 159 § 12 | Common carrier carries *for hire* |
| MGL 161 § 52 | Mail carriers are companies that carry for hire |
| MGL 266 § 38 | Carriers transports property *for hire* |
| MGL 64F § 2 | Motor carrier licenses issued |
| MGL 159B § 4 | Permits issued to contract carriers |
| MGL 159B § 8 | Common carrier certificates and contract carrier permits |

13

14

15

16

17

18

19

20

21

22

| | |
|---|---|
| MGL 159B § 10 | Interstate carriers; registration; fees |
| MGL 159B § 15A | Agricultural carrier's permit |
| MGL 41 § 98 | Powers and duty of police to *carry* weapons |
| MGL 152 § 75 | Agents...to *carry out* statutes |
| MGL 176T § 9 | Promulgation of rules and regulations...to *carry out* statute |
| MGL 23A § 13 | Offices, agencies and personnel to *carry out* duties |
| MGL 159 § 1 | Common carriers *receive, transport and forward* |

Supreme Court Case Law:

City of Los Angeles v. Lyons, 461 U.S. 95 (1983);
Article III requirement of "case or controversy."

American Banana Co. v. United Fruit Co., 213 U.S. 347 (1909);
words of universal scope will be construed as only those subject to the legislation.

McCullough v. Virginia, 172 U.S. 102 (1898);
statutory language cannot extend beyond the power of the legislature to reach.

Stenberg v. Carhart, 530 U.S. 914 (2000);
explicit definitions must be followed, even if it varies from its ordinary meaning.

Meese v. Keene, 481 U.S. 465 (1987);
statutory definitions excludes unstated meanings, and duty to construe legislation as it is written.

Perry v. United States, 294 U.S. 330 (1935);
the legislature cannot override the Constitution.

Eisner v. Macomber, 252 U.S. 189 (1920);
the legislature cannot alter the Constitution by legislation.

Juilliard v. Greenman, 110 U.S. 421 (1884);
legislative power not granted by the Constitution does not exist.

Miranda v. Arizona, 384 U.S. 436 (1966);
there can be no rulemaking or legislation for rights secured by the Constitution.

District of Columbia v. Heller, 554 U.S. 570 (2008);
definition of arms; Second Amendment is an inherent and individual right.

1

McDonald v. Chicago, 561 U.S. 742 (2010);
the Second Amendment is a basic right and is fully applicable to the States.

2

Caetano v. Massachusetts, 577 U.S. ___ (2016);
"*Massachusetts court poses a grave threat to the fundamental right of self-defense.*"

3

Grayned v. City of Rockford, 408 U.S. 104 (1972);
laws must allow reasonable opportunity to know what is prohibited.

4

5

Skilling v. United States, 561 U.S. 358 (2010);
to satisfy due process, sufficient definiteness is required for penal statutes.

6

Williams v. United States, 289 U.S. 553 (1933);
every word in the Constitution has due force and appropriate meaning.

7

8

Phelps v. United States, 274 U.S. 341 (1927);
legislation is to be in harmony with, and not to thwart, the purpose of the Constitution.

9

Marbury v. Madison, 5 U.S. 137 (1803);
"*...an act of the Legislature repugnant to the Constitution is void.*"

10

11

United States v. Delaware & Hudson Co., 213 U.S. 366 (1909);
duty to avoid grave and doubtful constitutional questions.

12

Panama Refining Co. v. Ryan, 293 U.S. 388 (1935);
"*the court prefers the meaning that preserves to the meaning that destroys.*"

13

14

The Floyd Acceptances, 74 U.S. 666 (1868);
statutes are "*acts authorizing the making of contracts with the government...*"

15

Murdock v. Pennsylvania, 319 U.S. 105 (1943);
*A state may not impose a license for the enjoyment of a Constitutional right.*

16

17

Coffin v. United States, 156 U.S. 432 (1895);
"*...presumption of innocence...is the undoubted law...*"

18

Sandstrom v. Montana, 442 U.S. 510 (1979);
It is constitutionally impermissible to shift the burden of proof by means of a presumption.

19

20

Donnelly v. DeChristoforo, 416 U.S. 637 (1974);
the prosecutor may not add to the record by subtle or gross improprieties.

21

22

1   Morissette v. United States, 342 U.S. 246 (1952);
Crime is doing harm by an evil-doing hand concurrent with an evil-meaning mind.

2
                    Other Case Law:

3
Miller v. United States, 230 F.2d 486 (5th Cir.);

4   the claim and exercise of a constitutional right cannot be converted into a crime.

5   Sherar v. Cullen, 481 F.2d 945 (9th Cir. 1973);
the exercise of constitutional rights can not be penalized.

6
                    Other Authorities:

7
Mass. Jury Instruction 3.240: Presumption.

8
Black's Law Dictionary, 3rd Edition online: https://thelawdictionary.org.

9   Black's Law Dictionary, 4th Edition.

10  Message publicly inscribed on the Franklin County Court House in Massachusetts (2017):

11

12  

13

14                  **LAW SECURES**
                    **\* LIBERTY \***
15                  **WITHOUT LICENSE**

16                  Numbered Exhibits:

17  # 1: Good-faith and material questions seeking clarification from defendant Healey. (2016)

18  # 2: Good-faith and material questions seeking clarification from assistant DA Bennett. (2018)

    # 3: Request for Answers to Discovery in Worcester District Court, 1962CR542. (2019)
19
    # 4: Officer Narrative and Statement of Facts, Worcester District Court, 1962CR542. (2019)

20

21

22

## VENUE, FORUM AND JURISDICTION

28 U.S. Code § 1391(b)(1)(2) provides that a civil action may be brought in a judicial district in which all the defendants are residents of the State in which the district is located; and in the judicial district in which a substantial part of the events giving rise to the claim occurred. The forum shall be the district court for the district of Massachusetts, which is a court of record[1] ordained and established by Article III, Section 1 of the Constitution.

28 U.S. Code § 1331 Federal question provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution or laws of the United States; and declaratory judgement and further relief is authorized by 28 U.S.C. § 2201 and § 2202.

The case or controversy requirement of Article III is satisfied because I can show that I have "*sustained or in immediately in danger of sustaining some direct injury as the result of the challenged official conduct, and the injury or threat of injury* [*is*] '*real and immediate,*' *not* '*conjectural*' *or* '*hypothetical.*'[2]"

---

[1] Title 28 U.S. Code § 132: United States District Court "*shall be a court of record.*" A court of record has (1) attributes and exercising functions independently of the person of the magistrate designated generally to hold it, (2) proceeds according to the course of common law, (3) its proceedings are enrolled for perpetual memorial, (4) which have power to fine or imprison for contempt, (5) error lies to their judgments, and (6) generally possess a seal. See Black's Law Dictionary, 4th Edition, page 426.

[2] City of Los Angeles v. Lyons, 461 U.S. 95 (1983).

## FACTUAL SUMMARY

On Saturday afternoon of 6/6/2020, my 12 year old son and I were exercising the free enjoyment of our right to keep and bear Arms for a lawful purpose on our rural farmland in Westfield Massachusetts. We collectively fired a total of ten rounds from a .22 sidearm at a steel target at the base of a small hill. I fired the first two rounds in order to show my son, and he fired the remaining eight rounds. Every bullet safely impacted the steel target.

Then a trespasser appeared from the cover of my woods to complain, and rudely demanded that we cease firing. I immediately directed the trespasser to leave my private property, or the police will be called. The trespasser went back into the wooded area, but did not leave my property. At this time, my son and I disarmed, secured and locked our Arms in a steel box, and locked the box in my car, before proceeding to search for the trespasser. I soon saw the trespasser and several other persons still lingering on my land. From a safe distance I again asked them to leave, and when the trespasser would not go, I attempted to call the police. My phone reception was poor, so I disengaged to find better service.

As my son and I were walking back to the car, three Westfield police officers arrived. They ordered me to yield, saying to the effect "we got a call that a property owner was shooting at trespassers." After a brief investigation, including a nonconsensual search of my locked car and the locked box, I was told that I was free to go. However, the officers seized the steel box containing two of my arms for personal use, stating that I was required to have a "*license to carry*," in order to have them, and that they will call me at the number I provided.

# THREE FEDERAL QUESTIONS

Based on the specific facts of my case, I believe the state's firearms statutes were improperly applied, and deprived me of my right to keep and bear Arms under the Constitution.

This As-Applied Challenge involves the State's firearms statutes, such as those found in Massachusetts General Laws Chapter 269 § 10 and others: "*Whoever, ... knowingly has in his possession ... a firearm, ... as defined in ... MGL 140 § 121 ... without ... a license to carry firearms issued under MGL 140 § 131 ... shall be punished by imprisonment...etc*" and other similar statutes, containing justiciable terms such as *license, possess, carry, firearm* and others.

Three Federal questions are respectfully presented:

(1) Can the explicit definitions in MGL 140 § 121, including "*firearms, large capacity feeding device, ammunition*" and others also include the *Arms* people keep and bear?

(2) Can the terms "*possess and carry*" and others as *entitled* by MGL 140 § 131 also mean the constitutional *right* of the people *to keep and bear* Arms?

(3) Does the claim and exercise of the right of the people to keep and bear Arms dependent upon the *license to carry firearms*?

1

### FIRST FEDERAL QUESTION

2

3 Can the explicit definitions in MGL 140 § 121, including "*firearms, large capacity feeding*

4 *device, ammunition*" and others also include the *Arms* people keep and bear?

5 To see how the explicit definition of "*firearms*" will be construed, the Supreme Court teaches

6 that "...*words of universal scope will be construed as meaning only those subject to the*

7 *legislation.*" American Banana Co. v. United Fruit Co., 213 U.S. 347 (1909). And "... *every*

8 *statute is to be read in the light of the constitution. However broad and general its language, it*

9 *cannot be interpreted as extending beyond those matters which it was within the constitutional*

10 *power of the legislature to reach.*" McCullough v. Virginia, 172 U.S. 102 (1898). And "*When a*

11 *statute includes an explicit definition, we must follow that definition, even if it varies from that*

12 *term's ordinary meaning.*" Stenberg v. Carhart, 530 U.S. 914 (2000).

13

14 The terms "*Arms*" and "*firearms*" are two different words, and thus have two distinguishable and

15 independent meanings. The Constitution is "*the supreme Law of the Land,*" and it divides Arms

16 into two groups: the Arms people keep and bear, and all other arms by exclusion. Since the Arms

17 people keep and bear shall not be infringed, such Arms are "*beyond...the constitutional power of*

18 *the legislature to reach.*" McCullough v. Virginia, *supra.* Thus, it is axiomatic that the statutory

19 definition of "*firearms*" excludes the Arms kept by the people, or by any one of them:

20

21 "*It is axiomatic that the statutory definition of the term excludes unstated meanings of that term...*

22 *As judges, it is our duty to construe legislation as it is written, not as it might be read by a*

1   *layman, or as it might be understood by someone who has not even read it.*" See <u>Meese v. Keene</u>,

2   481 U.S. 465 (1987); and for clarity, the court is invited to notice the following Venn Diagram,

3   showing the constitutional distinction that so clearly separates these subject matters:

4

5   

6

7   **All firearms are arms; the Constitution divides arms into two distinct groups:**

8

9

10

11

12

13

14   Based on this preliminary analysis, I have good reason to believe that the state's explicit

15

16   definition of "*firearms*," excludes the Arms that I keep and bear; but, in order to conclusively

17   determine the relationship between the statutory definition of "*firearms*" and the constitutional

18   meaning of "*Arms*," I asked the executive officers of the state, including defendant Healey for

19   their official clarification and determination, on at least three separate documented occasions[3], in

20   addition to my own research into this subject.

21

22   [3] See Exhibits 1, 2, 3.

1    In my search of the State's statute books, I found that the term "*Arms*" is neither defined, nor the

2    subject matter of any controlling legislation. This should be no surprise, as it is settled law that

3    the legislature "*cannot invoke the sovereignty of the people to override their will as declared in*

4    *the Constitution,*" Perry v. United States, 294 U.S. 330 (1935), and the legislature "*cannot by any*

5    *definition it may adopt [redefine its terms], since it cannot by legislation alter the Constitution,*

6    *from which alone it derives its power to legislate...*" Eisner v. Macomber, 252 U.S. 189 (1920).

7

8    I'm further informed by the Supreme Court that "*In this country, ... Congress [or the legislature]*

9    *can exercise no power which they have not, by their Constitution, entrusted to it; all else is*

10   *withheld. ... If the power is not in terms granted... it does not exist. And in... executing the powers*

11   *granted, they must be ... consistent with the letter and spirit of the Constitution.*" Juilliard v.

12   Greenman, 110 U.S. 421 (1884); and, "*Where rights secured by the Constitution are involved,*

13   *there can be no rulemaking or legislation which would abrogate them.*" Miranda v. Arizona, 384

14   U.S. 436 (1966). For these and other reasons, I believe that the Arms that I and other people keep

15   and bear, such as those secured by the Constitution are neither legislatively defined, nor subject

16   to any explicit legislative control.

17

18   For the meaning of "*Arms*," I had to rely on the guidance of the Supreme Court:

19         "*The 18th-century meaning is no different from the meaning today. ... "arms" [are]*

20         "*weapons of offence, or armour of defence.*"... Timothy Cunningham's important 1771

      legal dictionary defined "*arms*" as "*any thing that a man wears for his defence, or takes*

21         *into his hands, or useth in wrath to cast at or strike another.*" District of Columbia v.

22         Heller, 554 U.S. 570 (2008). "*the Second Amendment extends, prima facie, to all*

*instruments that constitute bearable arms, even those that were not in existence at the time of the founding."* Caetano v. Massachusetts, 577 U.S. ___ (2016).

My arms for personal use are Arms kept by one of the people[4]. As one of my *inherent, basic,* and *fundamental rights*[5], they *"shall not be infringed,"* they are *"beyond...the constitutional power of the legislature to reach,"* McCullough v. Virginia, *supra,* and they are axiomatically excluded from the explicit definition of *"firearms"* in MGL 140 § 121, Meese v. Keene, *supra.*

In contrast to the numerous legislative controls on *"firearms,"* the legislature specifically recognizes and affirmatively protects my right to keep and bear Arms in Massachusetts. In MGL 62C § 55A the legislature exempts arms for personal use from tax levy, and in MGL 60 § 24 military arms are excepted from levy by distress. Whereas, MGL 140 § 121 *"firearms"* enjoy no such exemption or exception. For these reasons, I believe that the Arms I keep and bear for personal use are different and distinct from the *explicit definitions* found in MGL 140 § 121.

---

[4] *"...the Second Amendment right is exercised individually and belongs to all Americans."* District of Columbia v. Heller, 554 U.S. 570 (2008). I may serve on a jury, hold elected office and exercise elective franchise. I am an honorably discharged officer, and veteran of the United States Army in the class of the unorganized militia (10 USC § 246), a licensed and practicing medical doctor, and have no derogatory record or disqualifying impairment. I am one of the people whose right to keep and bear Arms is indefeasibly secured by the Constitution.

[5] *"the **inherent right** of self-defense has been central to the Second Amendment right."* District of Columbia v. Heller, 554 U. S. 570 (2008). *"Self-defense is a **basic right**, recognized by many legal systems from ancient times to the present day, and in Heller, we held that individual self-defense is 'the central component' of the Second Amendment right."* McDonald v. Chicago, 561 U.S. 742 (2010). *"The reasoning of the Massachusetts court poses a grave threat to the **fundamental right** of self-defense. ... If the fundamental right of self-defense does not protect [us], then the safety of all Americans is left to the mercy of state authorities who may be more concerned about disarming the people than about keeping them safe."* Caetano v. Massachusetts, 577 U.S. ___ (2016).

Thus, the answer to the First Federal Question must be: No. The explicit definitions in MGL 140 § 121, including "*firearms, large capacity feeding device, ammunition*" and others constitutionally exclude the *Arms* people keep and bear.

SECOND FEDERAL QUESTION

Can the terms "*possess and carry*" and others as *entitled* by MGL 140 § 131 also mean the constitutional *right* of the people *to keep and bear* Arms?

On the surface, it may appear that the terms "*possess and carry*" and "*to keep and bear*" are similar enough that they could be interchangeable; but the obvious inconsistency, if one were to accept this fallacy is: How could the right of the people to keep and bear Arms not be infringed, if in Massachusetts they are required to obtain a license to *possess and carry firearms*? The distinction in *firearms* and *Arms* notwithstanding, the terms "*possess and carry*" and "*to keep and bear*" must also be sufficiently differentiated as to "*give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly.*[6]" That is, "*To satisfy due process, 'a penal statute [must] define the criminal offense [1] with sufficient*

---

[6] The Supreme Court insists "*that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. ...if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them.*" Grayned v. City of Rockford, 408 U.S. 104 (1972).

1   definiteness that ordinary people can understand what conduct is prohibited and [2] in a manner

2   that does not encourage arbitrary and discriminatory enforcement.'[7]"

3

4   In order *to know what is prohibited with sufficient definiteness, so that I may act accordingly*, I

5   asked several executive officers of the state, including defendant Healey for his/her official

6   clarification and determination, as to the difference between "*possess and carry*" and "*to keep*

7   *and bear*," on at least three separate documented occasions[8], in addition to my own research.

8

9   My research of the statute books did not show an explicit definition for the term "*carry*;"

10   therefore, I looked to the individual statutes to see how this term is used:

11

12   Carriers of all types found in the Massachusetts General Laws are subject to registration,

13   certification, permits, licensing or other regulatory control; for example: Motor **carriers** are

14   subject to licensing by MGL 64F § 2. Contract **carriers** are subject to permits issued by MGL

15   159B § 4. **Carriers** may hold a common carrier certificate or a contract carrier permit according

16   to MGL 159B § 8. Interstate **carriers** who transport within the commonwealth are required to

17   register by authority of MGL 159B § 10. An agricultural **carrier** is required to obtain an

18   agricultural carrier's permit in accordance with MGL 159B § 15A. So of course, it seems only

19   natural that a firearms carrier is also required to be licensed as well (MGL 140 § 131).

20

21   _____

[7] Skilling v. United States, 561 U.S. 358 (2010), Kolender v. Lawson, 461 U. S. 352 (1983).

22   [8] See Exhibits 1, 2, 3.

MGL 266 § 38 describes carriers as those "engaged in the business of transporting merchandise, parcels or other property *for hire*..." MGL 161A § 47 regards contracts with "private bus *carriers* ... for the carrying of passengers *for hire*." MGL 90 § 51M (2017 edition) "grants ... license[s] ... for the transportation of persons *for hire* by a public or private carrier..." MGL 90 § 49O (2017 edition) describes "public air carrier engaged principally in ... air transportation *for hire*..." MGL 159 § 12 (b) describes the "supervision and regulation" of "common carriers" rendering the service of "carriage of passengers *for hire* upon motor vehicles." MGL 161 § 52 defines that "carriers of mail [is] a company that "carry the US mail," presumably as a service or *for hire*.

Furthermore, the law dictionary[9] states: TRANSPORTATION means "*The removal of goods or persons from one place to another, by a carrier*;" and CARRIER is "*One who undertakes to transport persons or property from place to place*..." Therefore, it's only reasonable that "*carry*" means what carriers are licensed to do, and the MGL 140 § 131 "*license to carry entitles the holder thereof*" to carry for others, as distinguished from bearing arms for personal use.

Other meanings of the term *carry* can be found at MGL 41 § 98, which authorizes the "*powers and duties*" of police officers to "*carry...weapons*[10]." The term *carry* is also used in the context of "*carry out*" or "*carrying out*" the statutes by the executive branch of government; such as in MGL 152 § 75: "*Agents designated to...**carry out** statutes: ...executive officers...[shall] designate...agents...responsible for **carrying out** section* [69-75]...;" or MGL 176T § 9: "*The*

---

[9] <u>Black's Law Dictionary</u>, 3rd Edition; online at https://thelawdictionary.org/.

[10] MGL 140 § 121: "Weapon", any rifle, shotgun or firearm.

commissioner *may promulgate rules and regulations...to **carry out** the provisions of this chapter*;" or MGL 23A § 13 provides that the Office of Business Development "*may employ such personnel as may be necessary to **carry out** its duties...All departments, divisions, boards, bureaus, commissions ... shall provide assistance...in order to **carry out** said duties.*"

From the published legislation and the standard legal definition of terms, I have every reason to believe that the term "*carry*" when used in the legal, and statutory sense means what carriers are entitled to do "*in the business of transporting merchandise, parcels or other property **for hire**...*" (MGL 266 § 38), or an executive power to promulgate or to "***carry out***" the will of the legislature, including the "*powers and duties*" of police officers to "*carry...weapons.*" I can find no legislation or official definition to suggest that "*carry*" may mean my constitutional right to "*bear*" Arms, or to wear them for my defence, or anything other than an entitlement of commerce or an executive power of government.

The license at MGL 140 § 131 "*shall entitle the holder thereof to purchase, rent, lease, borrow, possess and carry: (i) firearms...*" Although to purchase, rent, lease, borrow and carry may all entail possession, none of these verbs specifically entitle or require the licensee "*to keep.*" On the contrary, those who rent, lease or borrow by definition must not *keep* the item in question; and, according to MGL 159 § 1, carriers function to "*receive, transport and forward...property*" and commonly, they deliver; but they do not ordinarily "*keep*" the property they are entitled to carry. Thus, I reason that the term "*possess*" as an ***entitled*** by the license to carry must be different from my constitutional ***right*** "*to keep.*"

The defendant has not produced any legislative evidence that the terms "*possess and carry*" can also mean my constitutional right "*to keep and bear*." In fact, all available evidence indicates the contrary. According to the Supreme Court: "*In expounding the Constitution, every word must have its due force and appropriate meaning, and no word is to be regarded as unnecessarily used or needlessly added.*[11]" and "*Acts of Congress [or the legislature] are to be construed and applied in harmony with, and not to thwart, the purpose of the Constitution.*[12]"

If the terms "*possess and carry*" were construed to also mean my constitutional right "*to keep and bear*," thereby equating licensed *entitlements* with the *rights* secured by the Constitution, then it would replace, subvert, usurp and defeat the *due force and appropriate meaning* of "*keep and bear*" and thus *thwart the purpose of the Constitution*. Furthermore, this error would also grossly violate the rules of constitutional repugnancy, avoidance and preservation, to wit:

"*...an act of the Legislature repugnant to the Constitution is void.*" Marbury v. Madison, 5 U.S. 137 (1803); "*...where a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter.*" United States v. Delaware & Hudson Co., 213 U.S. 366 (1909); and "*when a statute is reasonably susceptible of two interpretations, by one of which is unconstitutional and by the other valid, the court prefers the meaning that preserves to the meaning that destroys.*" Panama Refining Co. v. Ryan, 293 U.S. 388 (1935).

---

[11] Williams v. United States, 289 U.S. 553 (1933).

[12] Phelps v. United States, 274 U.S. 341 (1927).

1    Thus, the answer to the Second Federal Question must be: No. The terms *"possess and carry"*

2    and others as *entitled* by MGL 140 § 131 must not also mean the *right* of the people *to keep and*

3    *bear* Arms.

4

5

6                                   THIRD FEDERAL QUESTION

7

8    Does the claim and exercise of the right of the people to keep and bear Arms dependent upon the

9    *license to carry firearms*?

10

11   The licensing statute, MGL 140 § 131 states *"...A license shall **entitle** a holder thereof to*

12   *purchase, rent, lease, borrow, possess and carry*: (i) *firearms...*" According to this statute, to

13   obtain a license to carry, an application must be submitted with a $100 fee[13], then both the

14   applicant and the police chief must sign the license. Hence, the authorization by statute,

15   application, consideration and mutual acceptance are *prima facie* elements of a contract. In fact,

16   the Supreme Court describes such statutes as *"acts authorizing the making of contracts with the*

17   *government...*" See The Floyd Acceptances, 74 U.S. 666 (1868). Therefore, I believe the license

18   to carry firearms is plainly a contract for an ***entitlement***, authorized by a statute.

19

20

21   _____

22   [13] FEE. "A charge fixed by law for services of public officers or for use of a privilege under
     control of government..." Black's Law Dictionary, 4th Edition, page 740.

1   Since our nation is established on the principle that "*Governments are instituted among Men,*

2   *deriving their just powers from the consent of the governed,*[14]" contracts with the government

3   require consent. The Supreme Court makes the voluntary nature of licenses clear, when it further

4   declares in The Floyd Acceptances that "*...the person entering into such a contract must... see for*

5   *himself that his contract comes within the terms of the law.*"

7   As a doctor, I have a medical license, which entitles me to *doctor* for hire to benefit others; but

8   there is no license to diagnose or to treat my own ailments. Attorneys are entitled to *attorn* for

9   hire to benefit others, but there is no license for me to appear in court. Accountants are licensed

10   to *account* for hire to benefit others, but there's no license to calculate and submit my own tax

11   return. Likewise, carriers are licensed to *carry for hire* to benefit others, such as security guards,

12   or those in the business of transportation, but there's no license for me to bear Arms for a

13   traditionally lawful purpose[15]; such as "*arms for the common defence*[16]," or "*arms in defence of*

14   *[my] property*[17]," or to aid officers with "*arms*" to disperse and suppress riotous or unlawful

15   assemblies[18], or to keep "*arms for personal use*" as recognized in MGL 62C § 55A.

---

[14] The Declaration of Independence, 1776.

[15] "*The Second Amendment declares that it [i.e., the right of bearing arms for lawful purpose] shall not be infringed.*" District of Columbia v. Heller, 554 U.S. 570 (2008), quoting United States v. Cruikshank, 92 U.S. 542 (1876).

[16] Article XVII, Part the First, Massachusetts Constitution.

[17] MGL 149 § 177: Police assistance in protecting property.

[18] MGL 269 § 4: [Officers] Requiring aid; dispersing and suppressing assembly...

The defendant may claim that a license to carry firearms is required to keep and bear Arms in Massachusetts; but, what law requires me to *contract* with the state for an ***entitlement***, in order to exercise a ***right*** already secured by the Constitution? Obviously no such law exists, and the State has hitherto failed to produce any[19]. I believe my understanding is affirmed by the Supreme Court in that "*A state may not impose a charge [or a license tax] for the enjoyment of a right granted by the Federal Constitution.*" <u>Murdock v. Pennsylvania</u>, 319 U.S. 105 (1943). A similar public message is also inscribed upon the newly built (2017) Franklin County Court House in Greenfield, Massachusetts, to wit:



**LAW SECURES \* LIBERTY \* WITHOUT LICENSE**

Since "*A state may not impose a charge [or a license tax] for the enjoyment of a right granted by the Federal Constitution;*" and "*Where rights secured by the Constitution are involved, there can be no rulemaking or legislation which would abrogate them*" <u>Miranda v. Arizona</u>, *supra*; there's no reason to believe that my right to keep and bear Arms is dependent upon a license.

In fact, "...it has always been widely understood that the Second Amendment, like the First and Fourth Amendments, codified a *pre-existing* right. ... As we said in *United States v. Cruikshank*,

---

[19] See Exhibits 1, 2, 3.

92 U.S. 542, 553 (1876), "[t]his is not a right granted by the Constitution [*or MGL 140 § 131*]. Neither is it in any manner dependent upon that instrument [*nor a license*] for its existence.[20]"

Thus, the answer to the Third Federal Question must be: No. The exercise of the right of the people to keep and bear Arms is not in any manner dependent upon the *license to carry firearms*.

## AS APPLIED CHALLENGE

I completely agree with the defendant in that the state's firearm licensing statutes are perfectly constitutional as written, and further I insist that they be applied as it is written. That is: "*As judges, it is our duty to construe legislation **as it is written**, not as it might be read by a layman, or as it might be understood by someone who has not even read it.*" See <u>Meese v. Keene</u>, *supra*.

The facts of the case plainly show that my 12 year old son and I were enjoying our constitutionally secured right to keep and bear Arms. Yet, the defendant and her subordinate officers of the government have failed to apply the *legislation as it is written* by making impermissible and erroneous presumptions, which are both untrue and unsupported by the facts.

"*The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of*

---

[20] <u>District of Columbia v. Heller</u>, 554 U.S. 570 (2008).

*our criminal law.*" See <u>Coffin v. United States,</u> 156 U.S. 432 (1895). By presuming that I "*possessed or carried a firearm,*" the defendants have suppressed the reality that I was merely keeping and bearing arms for personal use. This is in error, as "*It is constitutionally impermissible to shift the burden of proof as to an element of the crime to the defendant by means of a presumption. <u>Sandstrom v. Montana,</u> 442 U.S. 510 (1979)...*" See <u>Mass. Jury Instruction 3.240</u>: Presumption.

"*The prosecutor is not a witness, and he should not be permitted to add to the record either by subtle or gross improprieties. Those who have experienced the full thrust of the power of government when leveled against them know that the only protection the citizen has is in the requirement for a fair trial.*" <u>Donnelly v. DeChristoforo,</u> 416 U.S. 637 (1974). Thus, it is impermissible for the defendant or her agents to violate my due process right to the presumption of innocence, by falsely presuming and describing my arms for personal use (MGL 62C § 55A) as statutory "*firearms*" (MGL 140 § 121), when no fact supports this presumption.

It is a <u>fact</u> that my 12 year old son and I were enjoying our constitutionally secured right to keep and bear Arms. It is an impermissible and erroneous presumption that I "*possessed*" or "*carried*" firearms, when there is <u>no fact</u> that I was undertaking to carry firearms *for hire,* within the meaning of MGL 161A § 47, MGL 90 § 51M (2017 edition), MGL 90 § 49O (2017 edition), MGL 159 § 12(b), MGL 161 § 52, MGL 266 § 38, or exercising a *power or duty* belonging to the government, such as carrying weapons, authorized by MGL 41 § 98.

When there is clearly no such thing as a license for religion, a license for freedom of speech, a license for the press, or a license to peaceably assemble, or a license for any other constitutionally secured right, it becomes impermissible and even absurd for the defendant or her agents to presume that I should be required to have a license to bear Arms. Indeed, the preferred and primary presumption of innocence is that there is no such thing as a license to bear Arms, and people cannot be compelled to contract with the state for an *entitlement* in order to exercise a *right* already secured by the Constitution.

It is <u>fact</u> that I was keeping and bearing Arms, and it is the <u>law</u> that "*The claim and exercise of a constitutional right cannot...be converted into a crime.*" <u>Miller v. United States</u>, 230 F.2d 486 (5th Cir. 1956); and since no fact shows that I exceeded the constitutional rights belonging to me, "*...there [can] be no sanction or penalty imposed upon [me] because of [my] exercise of constitutional rights.*" <u>Sherar v. Cullen</u>, 481 F.2d 945 (9th Cir. 1973). Thus, the defendants have impermissibly and erroneously applied Massachusetts General Laws chapter 269, the title of which is "Crimes Against Public Peace," when the presumption of innocence must primarily and preferentially maintain that my son and I were merely exercising our rights, when there is plainly <u>no fact</u> for an actual crime[21].

Therefore, the defendant and her agents are depriving my constitutional rights under color of statue by misapplying them at my peril.

---

[21] "*Crime, as a compound concept, generally constituted only from concurrence of an evil-meaning mind with an evil-doing hand...*" in the causation of harm. <u>Morissette v. United States</u>, 342 U.S. 246 (1952).

## PRAYER FOR RELIEF

WHEREFORE, I, Kang Lu, plaintiff, pray for judgement as follows:

1. A declaration that the explicit definitions in MGL 140 § 121, including "*firearms, large capacity feeding device, ammunition*" and others constitutionally exclude the *Arms* people keep and bear.

2. A declaration that the terms "*possess and carry*" and others as *entitled* by MGL 140 § 131 must not also mean the *right* of the people *to keep and bear* Arms.

3. A declaration that the claim and exercise of the right of the people to keep and bear Arms is not in any manner dependent upon the *license to carry firearms*.

4. An order of permanent injunction prohibiting the defendant, her officers, employees, attorneys and agents from misapplying the firearm licensing statutes in violation of the Constitution to abrogate or derogate my Second Amendment rights; including, the immediate cessation of any and all, possible, current or future prosecution, charges, indictment, seizure or detention for the lawful exercise of my right to keep and bear Arms independently of a "*license to carry firearms*," and the recall and nullification of any and all, possible, current or pending warrants or summons issued therefor.

5. An order for the immediately return of all property belonging to me, including my arms for personal use, which were seized under color of state statute and without due process of law.

6. An award in compensation for all relevant court fees, attorney and court reporter costs related to this action, as permitted by law and in such amounts to be proven at trial.

## DEMAND FOR TRIAL BY JURY

I hereby demand trial by jury on all issues so triable.

Kang Lu, M.D., plaintiff *in propia persona*.

9/21/2020

Date.

Address:   5753 Highway 85 North
             Crestview Florida 32536

E-Mail:    LibertyWithoutLicense@gmail.com

Phone:     850-517-1010